UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROBERT NICHOLS, et al., ) | CASE NO. 5:14-cv-613 |
| ) | |
| PLAINTIFFS, ) | JUDGE SARA LIOI |
| ) | |
| vs. ) | MEMORANDUM OPINION |
| ) | |
| VILLAGE OF MINERVA, OHIO, et al., ) | |
| ) | |
| DEFENDANTS. ) | |

Presently before the Court is defendants' motion to dismiss plaintiffs' second amended complaint (Doc. No. 22 ["12(b)(6) Motion"]) and plaintiffs' opposition, styled as a "reply" (Doc. No. 23 ["Reply"]). For the reasons that follow, defendants' motion to dismiss is granted.

## I. BACKGROUND

Plaintiffs Robert Nichols, Rachel Byfus Nichols, and G.B. filed a second amended complaint with leave of Court (Doc. No. 20 (Second Amended Complaint ["SAC"])), alleging, in bare bones fashion, that defendants Village of Minerva, Stark County, the Stark County Dog Warden,[1] and Officer Farmer of the Village of Minerva Police Department,[2] violated their constitutional rights under the Fourth and Fourteenth Amendments of the Constitution of the

---

[1] Although Stark County and Stark County Dog Warden are named as defendants, neither has ever been served and the time for doing so has expired. Therefore, these two defendants are dismissed.

[2] The Clerk's docket identifies the Village of Minerva Police Department as a separate defendant, since it was named in the original complaint; but, aside from the fact that the Police Department is *not* named in the SAC, to the extent the docket suggests it remains a defendant, it is dismissed *sua sponte*. *See Roth v. West Salem Police Dep't*, No. 5:13CV330, 2014 WL 2945802, at *1, n.2 (N.D. Ohio July 1, 2014) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("the Police Department is not an entity which may be sued"); *Elkins v. Summit Cnty., Ohio*, No. 5:05-cv-3004, 2008 WL 622038, at *6 (N.D. Ohio Mar. 5, 2008) ("[a]dministrative units of a local government, such as a municipal police department, are not *sui juris* because they lack the power to sue, and cannot be sued absent positive statutory authority," which has not been granted in Ohio)). Further, the SAC no longer names any of the Doe defendants included along the way; therefore, they are all dismissed.

United States, and deprived them of their civil rights, when: (1) the Village of Minerva, through its Police Department, arrested G.B. and charged him with juvenile offenses, when other individuals allegedly engaging in the same conduct were allegedly not arrested and/or charged; (2) Officer Farmer came onto plaintiffs' residential property with his weapon drawn and threatened to shoot plaintiffs' dog; and (3) the Stark County Dog Warden, acting on behalf of Stark County and the Village of Minerva Police Department, and with the aid of Officer Farmer, ticketed and charged plaintiff Rachel Byfus Nichols, at Robert Nichols' place of business, for failure to control/confine dogs and for having no dog licenses, when all of the relevant documentation was located at plaintiffs' residence – all for the sole purpose of harassment. (SAC ¶¶ 8-12).[3]

---

[3] These paragraphs of the SAC allege exactly as follows:

> 8. From the dates of May 19, 2013 through August 21, 2013, the Defendants' actions under color of law, harassed, humiliated and charged members of the Plaintiffs' family with various offenses for the sole purpose of harassment.
>
> 9. As a result of the unconstitutional actions of the Defendants, the Plaintiffs and their family members were charged with various criminal offenses, specifically on May 19, 2013, the Village of Minerva, through its Police Department, arrested the Plaintiff, G.B., a minor, by and through his mother and natural guardian, Rachel Byfus Nichols, and charged him with various juvenile offenses on that day. Other individuals who were similarly situated were not charged and were released even though they performed the same acts.
>
> 10. On July 21, 2013, the Defendant, Officer Farmer, came to the Plaintiffs' property and threatened to shoot one of the dogs owned by the Plaintiffs. The officer had his gun drawn to shoot the Plaintiffs' dog for reasons unknown to the Plaintiffs.
>
> 11. Subsequently, on August 21, 2013, Plaintiff, Rachel Byfus Nichols, was given tickets and charged at the Minerva Chiropractic Center, 15245 Lincoln Way, S.E., Minerva, Ohio 44657 by the Stark County Dog Warden under acting authority from Stark County, Ohio and with Defendant, Officer Farmer, of the Minerva Police Department, who was acting on behalf of the Defendant Minerva Police Department for failure to control/confine dogs and no dog licenses. All of the dogs and all of the licenses and various documents regarding vaccines and controlling the dogs were all located at their home at 216 Hart Avenue, Minerva, Ohio 44657.
>
> 12. The Defendant, Stark County Dog Warden, with the aid of Defendant, Officer Farmer of the Minerva Police Department, ticketed Plaintiff, Rachel Byfus Nichols, at the Minerva Chiropractic Center even though all of the dogs' licenses and various documents regarding vaccines were at Plaintiffs' home, ready to be produced at the Police Department and the Stark County Dog Warden's office.

Defendants Village of Minerva and Officer Farmer now argue that they are entitled to dismissal because (1) the arrest and charging of plaintiff G.B. does not amount to a constitutional violation, (2) plaintiffs' allegations regarding Officer Farmer having his gun drawn and threatening to shoot one of their dogs does not constitute a constitutional violation, (3) the Stark County Dog Warden, not Officer Farmer, was responsible for issuing the tickets to Rachel Byfus Nichols, and (4) due to her "no contest" plea, Rachel Byfus Nichols is barred from bringing a § 1983 claim relating to the charges against her.

Plaintiffs filed a three-paragraph "reply" in opposition to defendants' motion, arguing that any lack of merit in their claims is "based upon a lack of discoverable material at this early stage of the proceedings[,]" that "meaningful discovery [would] provide additional factual bases to show that all of the claims … are valid[,]" and that "[d]ismissal of the claims at this early stage of the proceedings would prevent additional discoverable material from being disclosed." (Reply at 212.[4]) Plaintiffs' reply fails to address the merits of the arguments in defendants' 12(b)(6) Motion.

## II. DISCUSSION

**A.     Standard of Review**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In other words, "Rule 8(a)(2) still requires a 'showing,' rather

---

[4] All page number references are to the page identification number generated by the Court's electronic docketing system.

than a blanket assertion, of entitlement to relief." *Id*. at 554, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Notably, Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Where no opposition is filed, or where the merits of an argument are not addressed, the Court "may deem the plaintiff to have waived opposition to the motion." *See Scott v. State of Tennessee*, No. 88-6095, 1989 WL 72470, at *2 (6th Cir. July 3, 1989); *see also Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (plaintiff had "not preserved [an issue], having not even attempted to argue the point before the district court") (internal quotation marks and citation omitted). That said, "the movant must always bear [its] initial burden regardless if an adverse party fails to respond[,] . . . [even] in the context of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).

**B.     Analysis of Claims**

   *1.     Selective Enforcement claim*

Defendants argue that plaintiffs fail to sufficiently allege a constitutional violation against G.B., either as a Fourth Amendment violation or as a selective enforcement claim. (12(b)(6) Motion at 190-91.) Since plaintiffs allege no lack of probable cause for G.B.'s arrest or juvenile charges, but only that other similarly situated individuals performing similar acts were not arrested or charged (SAC ¶ 9), the Court construes this as an attempt to plead a claim of selective enforcement.

Although selective enforcement usually arises as a defense in criminal proceedings, "[s]elective enforcement can also lead to § 1983 liability if the plaintiff pleads purposeful discrimination." *Gardenhire v. Schubert*, 205 F.3d 303, 318-19 (6th Cir. 2000) (internal quotation marks and citation omitted); *see also Oyler v. Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962) (selective enforcement is a federal constitutional violation if "based upon an unjustifiable standard such as race, religion, or other arbitrary classification").

In examining selective enforcement claims, the Sixth Circuit uses the following test:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Gardenhire*, 205 F.3d at 319 (quoting *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991)). "[T]here is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; 'the standard is a demanding one.'" *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th

Cir. 1997) (quoting *United States v. Armstrong*, 517 U.S. 456, 463, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996)). Here, plaintiffs cannot make out a claim for selective enforcement under the *Gardenhire* test for the simple reason that they do not allege that G.B. was a member of *any* identifiable group. *Rowe v. City of Elyria*, 38 F. App'x 277, 281 (6th Cir. 2002) (affirming grant of summary judgment on selective enforcement claim due to plaintiff's failure to allege, either in complaint or in response to motion, that he belonged to any identifiable group).

The Supreme Court, however, has recognized that the equal protection clause can give rise to a "class of one." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). "To present a class of one claim a plaintiff must demonstrate that he has been intentionally treated differently from others who are similarly situated and that there is no rational basis for the difference in treatment." *Benjamin v. Brachman*, 246 F. App'x 905, 927 (6th Cir. 2007) (citing *Olech*, 528 U.S. at 564). "Where a plaintiff succeeds in identifying similarly-situated individuals, plaintiff must also (1) refute every conceivable basis that might support the government action, or (2) demonstrate that the challenged action was motivated by animus or ill-will." *Id.* (citing *Klimik v. Kent Cnty. Sheriff's Dep't*, 91 F. App'x 396, 400 (6th Cir. 2004)).

Post-*Olech*, plaintiffs could proceed here on their selective enforcement claim by demonstrating that, based on either some bad reason or no rational reason, Officer Farmer intended to distinguish between G.B. and others who were not arrested or charged. *See Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004) (citing *Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1057 n.8 (6th Cir. 1996) and *Olech*). But plaintiffs' complaint alleges, in conclusory fashion, only that G.B. was charged with various juvenile offenses whereas, "[o]ther individuals who were similarly situated were not charged and were released even though they performed the same

6

acts." (SAC ¶ 9.) The complaint alleges no additional facts to support this assertion. There is *nothing* in the SAC to even suggest there were other juveniles with G.B. at the time of his arrest, acting in the same fashion as G.B., who were nonetheless released without arrest and/or without charge.[5] Paragraph 9 of the SAC is the very kind of "formulaic recitation of the elements of a cause of act [that] will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Plaintiffs have failed to plead a selective enforcement claim with the requisite sufficiency to survive a motion to dismiss.

    2.    *Excessive Force claim*

It is unclear whether plaintiffs are attempting to assert an excessive force claim or an unlawful seizure claim in their pleading. Plaintiffs allege that Officer Farmer came onto their property with his gun drawn and threatened to shoot their dog, and that, as a result, they are entitled to damages under the Fourth and Fourteenth Amendments. (SAC ¶¶ 10, 14).

Plaintiffs do not allege that Officer Farmer pointed his gun at one of them or, for that matter, that any of them was even present when Officer Farmer allegedly threatened to shoot their dog. Absent those facts, the SAC is insufficient because one may not assert an excessive force claim on behalf of a dog. *Powell v. Johnson*, 855 F. Supp. 2d 871, 874 (D. Minn. 2012) ("Fourth Amendment protects *persons* from the excessive use of force by police officers") (emphasis in original); *see also Taylor v. City of Chicago*, No. 09CV7911, 2010 WL 4877797, at *4 (N.D. Ill. Nov. 23, 2010) (disallowing maintaining a vicarious constitutional claim for the use of force against a dog). Accordingly, plaintiffs fail to plead a claim of excessive force with sufficiency to survive a motion to dismiss.

---

[5] Here, it is not a question of needing to draw inferences; there are simply *no facts* from which any inferences could be drawn.

Plaintiffs also fail to allege that they were subject to an unlawful seizure. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) (footnote omitted). "In order to be actionable, however, a seizure of property must be objectively unreasonable." *Luster v. City of Gallatin*, 50 F. App'x 189, 191 (6th Cir. 2002) (citing *Soldal v. Cook Co.*, 506 U.S. 56, 71, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992)).

Here, plaintiffs allege only that Officer Farmer was on their property with his gun drawn and threatened to shoot one of their dogs. They do not plead any specific facts that allege this conduct was unreasonable under the circumstances or was a meaningful interference with their ownership of the dog. The Court does not have a duty to infer facts that would help plaintiffs' claim survive a motion to dismiss. *Twombly*, 550 U.S. at 544 (citing *O'Brien v. DiGrazia*, 544 F.2d 543, 546 (1st Cir. 1976) (there is "[no] duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional … action into a substantial one"); *see also McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39, 42-43 (6th Cir. 1988) (quoting *O'Brien*, *supra*)).

Construing the limited facts in the light most favorable to the plaintiffs, they have not alleged sufficient facts to establish an unlawful seizure.

    3.    *Remaining § 1983 claims*

Finally, to the extent plaintiffs may be attempting to assert a § 1983 claim under the Fourth and Fourteenth Amendments relating to the Dog Warden's charges against Rachel Byfus Nichols, any such claim must fail. Plaintiff Rachel Byfus Nichols entered a "no contest" plea to the failure-to-control citation, and plaintiffs have produced no evidence that this conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 496-487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); *Daubenmire v. City of Columbus*, 507 F.3d 383, 390 (6th Cir. 2007) (finding that plaintiffs were estopped from asserting a § 1983 claim after entering a no contest plea).

### III. Conclusion

For the reasons set forth herein, defendants' Rule 12(b)(6) motion to dismiss the second amended complaint (Doc. No. 22) is granted.[6]

**IT IS SO ORDERED**.

Dated: March 23, 2016

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[6] Although the liberal amendment standards of Fed. R. Civ. P. 15(a)(2) might ordinarily suggest a need to grant plaintiffs leave to amend to cure the deficiencies of their complaint, in this case, where plaintiffs have already twice amended, such leave would be an exercise in futility. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (noting "repeated failure to cure deficiencies by amendments previously allowed" as one of several reasons to deny further amendment).